UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID OPPENHEIMER,<br><br>        Plaintiff,<br><br>  v.<br><br>PLEXUSS, INC.,<br><br>        Defendant. | Case No. 21-cv-01422-JCS<br><br>**REPORT AND RECOMMENDATION REGARDING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 15 |

## I.    INTRODUCTION

Plaintiff David Oppenheimer moves for default judgment on claims for copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA") against Defendant Plexuss, Inc., based on Plexuss's unauthorized use of two of Oppenheimer's photographs.  The undersigned magistrate judge held a hearing on August 20, 2021, and requested supplemental filings to address certain concerns, which Oppenheimer has since filed.  For the reasons discussed below, the undersigned recommends that the motion be GRANTED IN PART as to Oppenheimer's copyright violation claim, but DENIED as to his DMCA claim and his request for attorneys' fees.

Because Plexuss has not appeared and consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), this case will be reassigned to a United State district judge for all further proceedings, including action on the recommendations of this report.  Oppenheimer is instructed to serve a copy of this report on Plexuss by any means reasonably calculated to provide actual notice and to file proof of service to that effect.  Any party may file objections to these recommendations no later than fourteen days after being served with a copy of this report.

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    Allegations of the Complaint

Oppenheimer is a professional photographer who lives in North Carolina.  Compl. (dkt. 1) ¶ 2.  He alleges that "Plexuss is a corporation organized and existing under the laws of the State of California and citizen of the State of California with principal offices located in San Ramon or Walnut Creek, California," *id.* ¶ 3, although he later submitted evidence indicating that Plexuss is incorporated in Delaware and that its status with the California Franchise Tax Board is "forfeited," Townsend Decl. (dkt. 15-2) Ex. 1.

As is relevant to this case, Oppenheimer is the creator and sole owner of two aerial photographs of the University of North Carolina at Asheville that he took in 2014.  Compl. ¶¶ 4, 7 & Exs. 1, 2.  He registered copyrights for both works, with a certificate of registration issued by the U.S. Copyright Office on January 31, 2015.  *Id.* ¶ 6 & Ex. 2.  "Within three (3) years of filing suit," Oppenheimer discovered that Plexuss had used the two photographs at issue on its website. *Id.* ¶ 10.  Oppenheimer's attorney sent Plexuss a cease-and-desist letter, but Plexuss was not interested in settling the matter.  *Id.* ¶¶ 12–13.

Oppenheimer displays his photographs on a publicly available website "for perusal and licensing purposes."  *Id.* ¶ 5.  Oppenheimer uses copyright management information ("CMI") on the photographs he displays, and alleges that "the Works at issue in this case prominently displayed the CMI in the caption, with a facial watermark, and/or embedded in the metadata of the Works," which placed Plexuss on notice that the images were protected by copyright.  *Id.* ¶ 8.

Oppenheimer asserts two copyright claims in the alternative: one for non-willful infringement and one for reckless or willful infringement.  *Id.* ¶¶ 14–21.  He also asserts a claim under the Digital Millennium Copyright Act ("DMCA") asserting that Plexuss "intentionally removed the CMI metadata" from the photographs in order to facilitate infringement.  *Id.* ¶¶ 22–28.

### B.    Procedural History

Oppenheimer filed this case on February 26, 2021.  *See generally* Compl.  He served Plexuss's registered agent through a process server on March 8, 2021.  Proof of Service (dkt. 8).

United States District Court
Northern District of California

Plexuss did not appear or respond to the complaint, and on May 19, 2021, the Clerk entered

Plexuss's default.  Dkt. 12.  The undersigned held a case management conference on June 1, 2021

and set a deadline for Oppenheimer's motion for default judgment.  Dkt. 14.  Oppenheimer filed

his present motion on June 25, 2021.  *See generally* Mot. (dkt. 15).  The undersigned held a

hearing on August 20, 2021, raising concerns as to the sufficiency of Oppenheimer's evidence of

violation, reasonable royalties, and attorneys' fees.  Oppenheimer filed supplemental declarations

on August 27, 2021.  Oppenheimer Supp'l Decl. (dkt. 18); Townsend Supp'l Decl. (dkt. 19).

###    C.    Evidentiary Record

Oppenheimer's declaration generally tracks the allegations of his complaint.  *See generally*

Oppenheimer Decl. (dkt. 15-1).  He discovered that Plexuss was using the photographs at issue

"[l]ong prior to filing suit and making [a] written demand," and determined based on records from

the Internet Archive that Plexuss began using the photographs in 2018, "more than two years"

prior to his declaration.  *Id.* ¶ 4.  He states that photographs are typically licensed on an annual

basis, so the "more than two years" of infringement should be treated as three years of usage.  *Id.*

Oppenheimer describes his use of CMI, and Plexuss's omission of it, as follows:

> There is no credit in my name where the Works are used on the
> Plexuss website and my CMI was removed from metadata of the
> Works.

> As is my custom and practice, I clearly marked copies of the Works
> where they are offered by me for license on the Internet with
> copyright management information ("CMI") on the face of the
> Works, in legible captions adjacent to the Works where published or
> displayed, and embedded as metadata within the Works. The facial
> CMI consists of visible and legible watermarks and are displayed on
> the face of the Works on each copy that I publish or display. At the
> time that the CMI was removed from the Works, and at the time the
> Works were infringed by Plexuss by being published, displayed, or
> distributed having had the CMI removed from the metadata of the
> Works, Plexuss had to have known or had reasonable grounds to
> know that such behavior would induce, enable, facilitate, and/or
> conceal infringements of Plaintiff copyright in the Works.

*Id.* ¶¶ 4–5.

Oppenheimer purports to attach to his declaration "[t]rue and correct images of the Plexuss

website, where the Works were used without my permission.  *Id.* ¶ 4.  That attachment, which is a

Plexuss website discussing the University of North Carolina at Asheville, does not include the

photographs at issue.  *See id.* Ex. 3.

Oppenheimer states that he has never licensed the photographs at issue and "would have required a license fee in the amount of $11,540" for them, taking into account their use without attribution, the fact that they were taken during "high risk" manned flight, and Plexuss's purportedly "multinational scope of business," among other factors.  *Id.* ¶ 6.  He describes the hypothetical license fee as granting permission for Plexuss: "1) to display the Works on the Plexuss website to promote their educational technology, 2) with my watermark removed; 3) without crediting me as the creator of the Work; and 4) to display same for a period of at least three years."  *Id.*  Oppenheimer's stated license fee is consistent with values he obtained from fotoQuote, which he states is "well-recognized in the industry as the leader in helping photographers price, quote, and keyword their photographs," and where he applied the same factors as in his own analysis of a fair license fee.  *Id.* ¶ 7 & Ex. 4.  Oppenheimer states that he "was able to confirm that Plexuss does business internationally by soliciting foreign students on several platforms, including on its own website and on the Amazon marketplace."  *Id.* ¶ 7. According to Oppenheimer, he is entitled to statutory damages of $34,620 for copyright violation (three times the fair license fee) and $10,000 under the DMCA (based on a value of $5,000 per violation, which is twice the minimum statutory damages of $2,500 per violation).  *Id.* ¶ 11.

Oppenheimer's attorney Lawrence Townsend states that service of process was completed at the San Ramon address Plexuss provided to the California Secretary of State as its agent for service of process, and that he made contact with Plexuss's "Chief Financial & Strategy Officer" John Hall on April 28, 2021, who confirmed that the complaint had been served and assured Townsend that Plexuss would respond to the complaint.  Townsend Decl. (dkt. 15-2) ¶¶ 2–4. Plexuss did not respond to the complaint or correspond further with Townsend.  *Id.* ¶ 4. Townsend notes that, based on records from the Secretary of State, Plexuss's "corporate capacity has been forfeited in California."  *Id.* ¶ 5 & Ex. 1.

Townsend has practiced law since 1979 and "specialize[s] in copyright, trademark, and related intellectual property law."  *Id.* ¶ 6.  He took this case on a contingency basis, and proposes that fees should be awarded at a rate of $500 per hour, which is the average of the $450 per hour

United States District Court
Northern District of California

1    he charges for non-contingency work under his own name and his $550 "regular hourly rate with

2    Owen, Wickersham & Erickson, P.C." *Id.*  Townsend states that his time records indicate he spent

3    fourteen hours on this case on the following tasks: "preparing and filing the complaint; effecting

4    service on Plexuss; correspondence with client; email correspondence with Plexuss over a two-

5    week period at the beginning of May; entry of default; attendance via Zoom at the case

6    management conference; and preparation and filing of this motion." *Id.* ¶ 7.  His initial

7    declaration did not attached those records or provided any breakdown of how his time was

8    allocated among those tasks.  *See id.*

9            After the undersigned raised concerns at the hearing, Oppenheimer submitted a

10    supplemental declaration attaching evidence that he licensed a photograph for a one-day event for

11    $1,000, as a discount from his "typical fee [of] $2775 for [the licensee's] required usage," and that

12    he licensed two photographs for use in tabletop advertisements at various restaurants for an

13    average period of one year for a total of $5,000 ($2,500 per photograph).  Oppenheimer Decl.

14    ¶¶ 2–3 & Ex. A.  Oppenheimer also attaches new screenshots of Plexuss's website from the

15    Internet Archive, showing that his photographs are include in a slide show at the top of the website

16    (his previous screenshot showed a different, non-Oppenheimer photograph from that slideshow),

17    with his watermark reading "© 2015 David Oppenheimer" plainly visible on both photographs.

18    *Id.* Ex. B.  Oppenheimer acknowledges that the watermark is visible, but asserts again that "the

19    copyright management information (CMI) in the form of metadata had been removed without [his]

20    consent as set forth in [his] prior declaration."  *Id.* ¶ 5.

21            Townsend submitted a supplemental declaration with more detailed billing records.  *See*

22    *generally* Townsend Supp'l Decl.

23        **D.    Oppenheimer's Motion for Default Judgment**

24            Oppenheimer argues that the seven factors set forth in *Eitel v. McCool*, 782 F.2d 1470,

25    1471–72 (9th Cir. 1986), favor granting default judgment.  Mot. at 3–5.  He asserts that he has

26    provided sufficient allegations and evidence to show that Oppenheimer owns valid copyright for

27    the works at issue, that Plexuss copied the works (citing, among other evidence, the website

28    capture attached to Oppenheimer's declaration that does not actually show the photographs at

issue), and that Oppenheimer's estimated damages are reasonable. *Id.* at 5–7. Oppenheimer contends that applying a multiplier of three to a reasonable license fee of $11,540 for a total of $34,520 is appropriate to determine statutory damages under the Copyright Act, and that he should recover $10,000—twice the minimum statutory damages for two violations—under the DMCA. *Id.* at 7–9. Oppenheimer seeks $8,000 in attorneys' fees and $489 in costs. *Id.* at 9.

## III.    ANALYSIS

### A.    Legal Standard

After default has been entered against a party, a district court may grant an application for default judgment in its discretion. *See* Fed. R. Civ. P. 55(b)(2). If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, it then considers several factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### B.    Jurisdiction and Service of Process

As a preliminary matter, a court considering a motion for default judgment must determine whether it has both subject matter jurisdiction and personal jurisdiction, and dismiss sua sponte if it does not. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court has "federal question" subject matter jurisdiction over Oppenheimer's complaint because his copyright and DMCA "aris[e] under the . . . laws . . . of the United States." *See* 28 U.S.C. § 1331.

The Court has general jurisdiction over Plexuss because although Plexuss is registered in Delaware and its "corporate capacity has been forfeited in California," it is headquartered in California. Townsend Decl. ¶ 5; Compl. ¶ 3. Whitaker properly served the person apparently in

6

charge at the address listed for Plexuss's registered agent—a UPS Store—satisfying Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure.  *See* Proof of Service (dkt. 8); Townsend Decl. Ex. 1; *see also* Fed. R. Civ. P. 4(e)(1), (h)(1)(A) (permitting service as authorized by state law); Cal. Civ. Proc. Code § 416.10(a) (authorizing service on a corporation's designated agent).

### C.   *Eitel* Factors

Several of the *Eitel* factors weigh in favor of granting default judgment simply because Plexuss has not appeared in this action.  Since Plexuss has failed to respond to the complaint or otherwise appear in this action, Oppenheimer will be left without a remedy, and therefore prejudiced, if default judgment is not granted.  The sum of money is not so high as to weigh against granting judgment to the extent that damages are supported by evidence, an issue discussed separately below.  Plexuss was properly served—moreover, it engaged in discussions with Oppenheimer's attorney after being served, Townsend Decl. ¶¶ 3–4, and Oppenheimer mailed Plexuss a copy of its present motion, *see* dkt. 15-4—and there is no indication that its default is due to excusable neglect.  Finally, while there is a strong public policy favoring the resolution of disputes on the merits, that is not possible in this case because Plexuss has failed to appear to defend the case, and there is no indication that it intends to do so.

The remaining factors—"the merits of plaintiff's substantive claim," "the sufficiency of the complaint," and potential "dispute[s] concerning material facts"—are intertwined where, as here, the case has not advanced beyond the pleading stage.

### 1.   DMCA Claim

The DMCA provides in relevant part that:

> No person shall, without the authority of the copyright owner or the law—
>
> (1) intentionally remove or alter any copyright management information,
>
> . . . or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

3   17 U.S.C. § 1202(b).  "Copyright management information" includes, among other categories, the

4   "name of, and other identifying information about, the author of a work" or "the copyright owner

5   of the work, including the information set forth in a notice of copyright."  *Id.* § 1202(c)(2)–(3).

6        Oppenheimer asserted that Plexuss removed his metadata and displayed photographs

7   without attribution with the intent to conceal Plexuss's infringement.  His initial filings on this

8   issue ranged from misleading to false.  While some portions of those filings focused on metadata,

9   which Oppenheimer has consistently asserted was removed from the photographs Plexuss

10  displayed,[1] others referred to CMI more generally.  Oppenheimer's statement in his sworn

11  declaration that "[t]here is no credit in my name where the Works are used on the Plexuss

12  website," Oppenheimer Decl. ¶ 4, is false—the website in fact provided credit in Oppenheimer's

13  name in the form of his visible watermark on the photographs.  Oppenheimer Supp'l Decl. ¶ 5 &

14  Ex. B.  His calculation of a hypothetical license fee for display "with my watermark removed"

15  strongly implies that the watermarks were, in fact, removed.  Oppenheimer Decl. ¶ 6.  Nothing in

16  Oppenheimer's initial filings revealed that the watermarks were displayed on the images Plexuss

17  used, and his initial submission of a screenshot that did not actually show his photographs on

18  Plexuss's website concealed the fact that they included his watermarks.  *See* Oppenheimer Decl.

19  Ex. 3.

20       There are any number of reasons why metadata might have been removed from the

21  photographs in the process of Plexuss posting them to its website.  But given that Plexuss

22  prominently displayed Oppenheimer's copyright watermarks—which would have been trivially

23  easy to crop from the photographs if Plexuss had chosen to do so—it is not plausible that Plexuss

24  removed the CMI metadata either with knowledge that it would enable or conceal infringement, or

25  with the intent to do so.  The undersigned therefore recommends that Oppenheimer's motion for

26

27  ───────────────
    [1] There is no evidence for this point beyond Oppenheimer's conclusory assertions, but the
    allegation in his complaint that the metadata was removed is taken as true for the purpose of
28  default judgment, and would likely be sufficient in the absence of other reasons to deny default
    judgment on this claim as discussed below.

1  default judgment be DENIED as to his claim under the DMCA.

2                    **2.**          **Copyright Claim**

3        "To establish infringement, two elements must be proven: (1) ownership of a valid

4  copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns,*

5  *Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted).  A work is original, under

6  copyright law, so long as it "was independently created by the author (as opposed to copied from

7  other works), and . . . it possesses at least some minimal degree of creativity." *Id.* at 345 (citation

8  omitted).  Oppenheimer sufficiently alleged that he owns valid copyrights that meet that

9  definition, and he alleges that Plexuss copied those photographs on its website with knowledge

10  that doing so infringed Oppenheimer's copyrights.  The initial evidence he submitted showing

11  Plexuss's purportedly infringing website *without* those photographs raised some doubt as to the

12  truth of this allegation, *see* Oppenheimer Decl. Ex. 3, but Oppenheimer has since submitted

13  evidence showing that Plexuss in fact used his photographs on its website, Oppenheimer Supp'l

14  Decl. Ex B.  The undersigned recommends that his motion be GRANTED as to Oppenheimer's

15  claim for copyright infringement.

16      **D.**    **Damages**

17                    **1.**          **Statutory Damages for Copyright Violation**

18        In a copyright infringement case, a "plaintiff may elect statutory damages regardless of the

19  adequacy of the evidence offered as to his actual damages and the amount of the defendant's

20  profits." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d

21  1186, 1194 (9th Cir. 2001) (citation and internal quotation marks omitted).  For each work

22  infringed, a plaintiff may recover no less than $750 and no more than $30,000, with the maximum

23  recovery increased to $150,000 "where the copyright owner sustains the burden of proving, and

24  the court finds, that infringement was committed willfully."  17 U.S.C. § 504(c)(1)–(2).  "If

25  statutory damages are elected, the court has wide discretion in determining the amount of statutory

26  damages to be awarded, constrained only by the specified maxima and minima." *Columbia*

27  *Pictures*, 259 F.3d at 1194 (cleaned up).  "[S]tatutory damages should generally bear some

28  relationship to actual damages."  *See Jones v. Collectal Assocs.*, No. 15-cv-02223-JCS, 2016 WL

United States District Court
Northern District of California

1   721279, at *4 (N.D. Cal. Jan. 29, 2016), *recommendation adopted*, No. 15-cv-02223-SI, 2016 WL

2   879870 (N.D. Cal. Mar. 8, 2016) (cleaned up).

3           As a general rule, to deter infringement and ensure that infringers are not "free to 'sneer' in

4   the face of the Copyright Act[,] courts must put defendants on notice that it costs less to obey the

5   Copyright Act than to violate it." *Girlsongs v. 609 Indus., Inc.*, 625 F. Supp. 2d 1127, 1131 (D.

6   Colo. 2008).  Courts therefore "routinely award as statutory damages in cases such as this amounts

7   that are between two and three times license fees." *Id.* (citing decisions from district courts

8   throughout the country).

9           Oppenheimer's initial evidence of a $5,770 three-year license fee per photograph was

10  relatively thin.  He asserts that he "would have required" that fee based on the particular

11  circumstances of these photographs and Plexuss's usage, but does not assert that anyone has

12  actually paid that rate for his work.  *See* Oppenheimer Decl. ¶ 6.  He asserts that the fotoQuote

13  tool he uses to support that rate is "well-recognized in the industry in helping photographers price,

14  quote, and keyword their photographs," but provides no evidence that it comports with license

15  fees actually paid in the market.  *See id.* ¶ 7.  This initial declaration did not meet the out-of-circuit

16  test he cites for "what licensors *have paid* for use of similar work."  *See* Mot. at 6 (quoting

17  *Thornton v. J. Jargon Co.*, 580 F. Supp. 2d 1261 (M.D. Fla. 2008)) (emphasis added).  He also

18  offers no evidence that Plexuss used the photographs "up to full page display," or "with [his]

19  watermark removed"—two of the factors he used in determining his stated rate.  *See* Oppenheimer

20  Decl. ¶ 6.

21          Oppenheimer's supplemental declaration provides relevant evidence as to actual licensing

22  fees he has received for his work, particularly the evidence that he licensed use of aerial

23  photographs of a ski resort for $2,500 per photograph.  Oppenheimer Supp'l Decl. Ex. A.  If, as

24  Oppenheimer asserts, that reflected an annual rate, *id.* ¶ 3, it might support a per-photograph

25  license fee of as much as $7,500 for three years of use here, but the undersigned is not persuaded

26  that a one year term is an accurate description of the license.  By its terms, the license allowed use

27  at two locations for five months, one location for eight months, and one for eighteen months.  *Id.*

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex. A.[2]  Since Plexuss is only alleged to have use the photographs in one location—a single page of its website—a better comparison might be to treat the ski resort license as an eighteen-month term, reflecting a three-year rate of $5,000 per photograph.  Given the relatively small difference between that and Oppenheimer's $5,770 estimate, however, and affording some evidentiary value to Oppenheimer's assessment based on his own experience and the fotoQuote tool, the undersigned finds Oppenheimer's estimate to be reasonable.

Courts often exercise discretion to set statutory damages at some multiple of the fair license fee in order to deter infringement.  *Girlsongs*, 625 F. Supp. 2d at 1131.  Under the unique circumstances of this case, the undersigned does not recommend doing so here.  Oppenheimer provided misleading submissions that obscured the relevant fact that Plexuss had left his watermark on the images, and pursued $10,000 for a claim under the DMCA that is not viable in light of that fact.  While the record is not so clear to say that Oppenheimer intended to mislead the Court, rather than doing so inadvertently through use of boilerplate filings and a lack of attention to this particular case, his litigation conduct weighs against awarding him a windfall of more than the fair license fee for his works.  Given the unusual nature of this case, awarding damages at only the fair license rate would not incentive future infringement by Plexuss or others, because a potential infringer cannot expect copyright owners to engage in the same sort of conduct that Oppenheimer has here.  The undersigned also notes that in light of the manner in which Plexuss used the works—as images in a slideshow on the page for one of many universities included on its website—it seems somewhat unlikely that, given the choice at the outset of paying Oppenheimer's license fee, Plexuss would have chosen to do so rather than omitting these photographs or replacing them with amateur or public-domain images.  Requiring payment at Oppenheimer's stated rate therefore likely has some deterrent value in that it represents a larger payment than Plexuss might have paid in a counterfactual world where it chose not to infringe.  *See Jones v. Collectal Assocs.*, No. 15-cv-02223-JCS, 2016 WL 721279, at *5 (N.D. Cal. Jan. 29, 2016),

United States District Court
Northern District of California

---

[2] It is less clear what inferences can be be drawn from the $1,000 license fee for one day's use in the other example Oppenheimer provided.  *See* Oppenheimer Supp'l Decl. ¶ 2.

11

1    *recommendation adopted*, 2016 WL 879870 (N.D. Cal. Mar. 8, 2016).[3]  The undersigned therefore

2    recommends awarding Oppenheimer damages of $5,770 per photograph, for a total of $11,540, for

3    his claim under the Copyright Act.

### 2.    Attorneys' Fees and Costs

5    The Copyright Act grants courts discretion to award reasonable attorneys' fees and costs to

6    a prevailing party in an infringement action.  17 U.S.C. § 505.  The Supreme Court has rejected an

7    argument that a party prevailing on a Copyright Act claim "should be awarded attorney's fees as a

8    matter of course, absent exceptional circumstances," instead holding that district courts must

9    exercise "equitable discretion" in deciding whether to award fees.  *Fogerty v. Fantasy, Inc.*, 510

10    U.S. 517, 533–34 (1994).  The undersigned finds an award of fees to be inappropriate here.

11    Oppenheimer's attorney Lawrence Townsend's filings include a number of instances of

12    boilerplate text not updated to suit this case, or in at least one instance not completed at all.  *See,*

13    *e.g.*, Compl. ¶ 6 (referring to copyright registration for "the subject photograph of the Oakland

14    federal courthouse"); *id.* ¶ 10 (referring to "one or more of the Defendants" when there is only one

15    defendant in this case and alleging Plexuss used Oppenheimer's photographs "for the purpose of

16    advertising and marketing the legal services of Defendant," when Plexuss in fact appears to be a

17    website focused on college admissions, not "legal services"); Mot. at 2 ("On March , 2021, [sic]

18    Plexuss was served with a copy of Plaintiff's Complaint and Summons.").  His motion also relies

19    heavily on Eleventh Circuit law rather than decisions from the Ninth Circuit or district courts

20    within the Ninth Circuit.  *See* Mot. at 5–9 (citing six decisions from the Eleventh Circuit or district

21    courts within that circuit, two from district courts in Texas, and none from the Ninth Circuit or its

22    district courts).  The apparent lack of individualized attention paid to the case would likely warrant

23    some reduction in fees.

24    More significantly, Oppenheimer submitted misleading (and in at least one instance, false)

---

26    [3] To be clear, the undersigned does *not* mean to suggest that Oppenheimer's work as a
27    professional photographer, including in particular the photographs at issue here, is worth no more
than amateur images.  The discussion above is intended only to consider for the purpose of
deterrence what compliance would have looked like, and thus would have cost, for someone in
28    Plexuss's position, who might have chosen cheaper (and potentially inferior) photographs for the
particular purpose at issue.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  statements to the Court regarding the extent to which Oppenheimer's CMI was removed from the

2  works, obscuring the fact that Plexuss retained Oppenheimer's copyright watermarks when it

3  displayed the photographs at issue.  Particularly in the context of default judgment, where

4  allegations are taken as true and no opposing party is present to challenge factual assertions,

5  district courts really heavily on counsel's candid and careful presentation of a case.  It might well

6  have been within the Court's discretion to accept the declaration that Plexuss displayed

7  Oppenheimer's works without attribution (and the implication that it removed his watermarks)

8  without requesting further evidence, and thus to enter judgment in Oppenheimer's favor on the

9  DMCA claim based on that false statement.  While this appears to have been just a mistake, it is a

10  mistake in a context where the Court, in the absence of review by an adversary, relies more than

11  usual on the diligence of counsel.  Townsend has not fulfilled that duty.  The undersigned

12  therefore recommends that Oppenheimer's request for attorneys' fees be DENIED.

13      The Copyright Act also authorizes a discretionary award of costs.  17 U.S.C. § 505.

14  Townsend states that Oppenheimer incurred costs of $400 for this Court's filing fee and $89 for

15  service of process.  Townsend Decl. ¶ 8.  The undersigned recommends awarding those costs in

16  full.

## IV.    CONCLUSION

18      For the reasons discussed above, the undersigned recommends that Oppenheimer's motion

19  for default judgment be GRANTED IN PART as to his claim under the Copyright Act, and that

20  judgment be entered in his favor in the amount of $12,029, inclusive of costs.  The undersigned

21  recommends that Oppenheimer's motion be DENIED as to his claim under the DMCA and his

22  request for attorneys' fees.  Any party may file objections to these recommendations no later than

23  fourteen days after being served with a copy of this report.

24  / / /

25  Dated: September 7, 2021

26

27  JOSEPH C. SPERO
    Chief Magistrate Judge

28